IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Joseph M.,[1]

    Plaintiff,

v.               Case No. 22-1065-JWL

Kilolo Kijakazi,
Acting Commissioner of Social Security,

    Defendant.

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court orders that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**I. Procedural History**

Plaintiff protectively filed an application for DIB applied for a period of disability and disability insurance benefits on April 23, 2020. After exhausting administrative remedies before the Social Security Administration (SSA), plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred by failing

---

[1] Because the court makes its opinions available online, it captions this case using only the first initial of plaintiff's last name to protect his privacy interest.

to include in the RFC a limitation reflecting plaintiff's asserted need to elevate his feet or legs during the workday due to his neuropathy and by failing to explain the reason for the omission.

## II. Standard for Judicial Review

The court's review is guided by the Act. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *accord White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Wall*, 561 F.3d at 1052; *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *accord Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005); *see also Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute

[the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in *Bowling*)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett*, 862 F.2d at 804-05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Williams*, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. *Id*.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). In steps one through four the burden is on plaintiff to prove a disability

3

that prevents performance of past relevant work. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006); *accord Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams*, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. *Id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since June 1, 2019. He determined at step two that plaintiff had the following severe impairments: neuropathy; right shoulder pain; sickle cell disease; depression; anxiety; and post-traumatic stress disorder. At step three, the ALJ found that plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. In connection with step four of the sequential evaluation process, the ALJ determined that plaintiff had the RFC to perform a limited range of light work. Specifically, the ALJ found that plaintiff had the residual functional capacity

> to lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for four hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant can occasionally climb ladders, ropes and scaffolds, climb ramps and stairs, stoop, kneel, crouch and crawl. The claimant can frequently reach overhead with the right upper extremity. The claimant can occasionally use foot controls bilaterally. The claimant can occasionally work at unprotected heights, with moving mechanical parts, and in vibration. The claimant is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. The claimant can occasionally respond to and have interaction with [the] general public.

The ALJ determined at step four that plaintiff was unable to perform any past relevant work. After considering plaintiff's age, education, work experience, and RFC, he determined at step five that

there were jobs existing in significant numbers in the national economy that plaintiff could perform. Thus, the ALJ concluded that plaintiff had not been under a disability from June 1, 2019 through the date of his decision.

**III. Discussion**

Plaintiff asserts that the ALJ erred by failing to include in the RFC a limitation reflecting plaintiff's asserted need to elevate his feet or legs during the workday and by failing to explain the reason for the omission. Plaintiff contends that two pieces of evidence support his claim—his own testimony about his need to elevate his feet due to his neuropathy and the treatment notes of APRN Kelley Herron who, in July 2021, indicated that plaintiff should "make sure that he is elevating his feet when sitting."

The court begins with plaintiff's argument that the ALJ improperly ignored plaintiff's own testimony about his need to elevate his feet. According to plaintiff, he testified that while he could perform certain household chores, he needed to sit and rest with his feet elevated for 15 to 30 minutes "during each activity throughout the day." Pl. Br. 6. A closer reading of the hearing transcript, however, reflects that plaintiff testified only that he needed to elevate his feet for a total of thirty minutes each day:

> Q: If you had to guess—and I know it might depend on the activities—but on an average day, how much time do you spend with your feet elevated?
>
> A: I can estimate about 30 minutes, about half an hour.

R. 54.[2]  Significantly, plaintiff did not testify, and the record does not suggest, that plaintiff's neuropathy required him to elevate his feet multiple times throughout the day. In the absence of evidence that plaintiff's asserted need to elevate his feet affected his ability to complete a normal workday and workweek, substantial evidence supports the ALJ's failure to include a provision for leg elevation in the RFC assessment.  Stated another way, plaintiff's testimony about his need to elevate his feet during the day is not inconsistent with his RFC.  *See Tory R. v. Saul*, 2021 WL 1115911, at *17 (D.S.C. Mar. 24, 2021) (substantial evidence supported ALJ's decision not to include a provision for leg elevation in the RFC assessment where plaintiff testified that he needed to elevate his legs for 30 to 60 minutes each day); *Hodo v. Comm'r of Soc. Sec.*, 2019 WL 1197702, at *6–7 (E.D. Mich. Feb. 18, 2019) (no error in RFC assessment that did not include leg elevation limitations stemming from neuropathy where plaintiff testified that he did not elevate his feet for more than 30 minutes once a day, which presumably could be done on his lunch break).

Moreover, while the ALJ did not address plaintiff's asserted need for feet or leg elevation specifically, he did discuss plaintiff's symptoms underlying the asserted need for feet or leg elevation, including plaintiff's reports of swelling and pain. And with respect to plaintiff's testimony concerning his pain and his asserted inability to sit, stand or walk for long periods, the ALJ expressly found plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," and discounted plaintiff's statements for that reason. R. 18.  In fact, in discounting

---

[2] Earlier in his testimony, plaintiff stated that sometimes he took additional breaks during household chores when he felt nauseous.  According to plaintiff, his doctor told him "that means, like, I'm just about to pass out, so I should find somewhere to sit down" and "rest and raise my leg."  R. 51. But no evidence in the record attributes these circumstances to plaintiff's neuropathy.

plaintiff's testimony about the limiting effects of his symptoms, the ALJ relied in part on APRN Herron's objective findings on examination, including her consistent, repeated findings that plaintiff exhibited normal gait and normal motor strength in his lower extremities. Plaintiff has not shown that the ALJ's finding in this regard is erroneous.

The court turns, then, to the evidence that APRN Herron indicated that plaintiff should "make sure that he is elevating his feet when sitting." The evidence reflects that plaintiff began seeing APRN Herron in February 2021. Exhibit 6F, p. 10. Medical records indicate that plaintiff saw APRN Herron on nine occasions from February 1, 2021 through August 16, 2021. Exhibit 6F, 8F. On each of these visits, APRN Herron noted on examination that plaintiff had full range of motion in his extremities, with a normal gait and normal motor strength in his lower extremities. In his written decision, the ALJ noted these findings in connection with plaintiff's reported issues with pain and leg swelling and plaintiff's neuropathy diagnosis. In fact, the ALJ relied in part on APRN Herron's objective examination findings in assessing the RFC and in determining that additional limitations were not supported by medical evidence. The ALJ also found that additional limitations were not warranted in light of plaintiff's own testimony concerning his daily activities. Thus, while the ALJ did not specifically mention any allegations or findings about feet or leg elevation, the ALJ clearly took into account plaintiff's allegations of pain and leg swelling, his neuropathy diagnosis, and APRN Herron's findings on examination in assessing the RFC.

Plaintiff contends that APRN Herron's note that plaintiff should elevate his feet when sitting constitutes a medical opinion that requires an articulation of its persuasive value by the ALJ pursuant to 20 C.F.R. § 404.1520c (2017). The court disagrees. A medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) and

7

whether you have one or more impairment-related limitations or restrictions" in the abilities to perform certain work-related activities. *See* 20 C.F.R. 404.1513(a)(2) (2017). APRN Herron's note appears on two occasions in the medical records. The first is April 8, 2021, when APRN Herron "encouraged" plaintiff to wear compression socks "when he's on his feet for extending [sic] periods of time" and to "elevate feet when sitting" in connection with his hypertension. Significantly, APRN Herron did not diagnose neuropathy at this visit and she found no evidence of edema. Plaintiff does not suggest that this note relates to his neuropathy or should have been addressed by the ALJ.

On July 13, 2021, APRN Herron found "bilateral pedal edema non pitting" on examination, but also found that sensation was present and that plaintiff exhibited normal gait and normal motor strength in his lower extremities. With respect to her neuropathy assessment, APRN Herron set forth a treatment "plan" that included the following language: "Encourage patient to wear compression socks and make sure he is elevating his feet when sitting." The "plan" portion of APRN Herron's notes with respect to plaintiff's neuropathy also included a notation that Herron had prescribed Gabapentin. Notably, plaintiff saw APRN Herron again on August 16, 2021. At that appointment, APRN Herron again found "bilateral pedal edema non pitting," but found that sensation was present and that plaintiff again exhibited normal gait and normal motor strength in his lower extremities. Nothing in the record indicates that she advised feet elevation at that appointment.

Nothing in APRN Herron's July 13, 2021 notes reflect any limitation or restriction on plaintiff's work activities relating to feet elevation. The isolated reference to feet elevation contains no specifics as to the duration, to what degree, or how often. There are no specifics as to

8

the length of time, i.e., for a few weeks or for an indefinite period. Because APRN Herron's single statement to "make sure he is elevating his feet when sitting" is not a statement about plaintiff's impairments, restrictions, abilities or limitations, it contained no medical opinion that the ALJ was required to assess. *See Moua v. Colvin*, 541 Fed. Appx. 794, 797 (10th Cir. 2013) (treatment notes did not offer any medical opinions concerning plaintiff's abilities or limitations but simply documented plaintiff's complaints and chronicled pain medications and treatment doctor prescribed for her); *accord Robert S. v. Kijakazi*, 2022 WL 3908780, at *3 (D.N.M. Aug. 30, 2022).

For the foregoing reasons, plaintiff has not established that an additional limitation with respect to leg elevation should have been included in his RFC or that the ALJ erred by failing to address APRN Herron's suggestion that plaintiff elevate his feet when sitting.  See *Patterson v. Kijakazi*, 2022 WL 103884, at *9 (M.D.N.C. Jan. 10, 2022) (two treatment notes reflecting "one-time isolated" suggestions that plaintiff elevate her legs did not "equate to a physical restriction or a judgment" about plaintiff's work-related restrictions) (citing *Cruz v. Commissioner of Soc. Sec. Admin.*, 2020 WL 3567033, at *2 (D. Ariz. July 1, 2020) (holding that "ALJ was not obligated to include a need to elevate the legs when sitting in the RFC finding," because the doctor "merely recommended that [the plaintiff] elevate her legs when sitting" and "did not state it was necessary for work"); *Eidson v. Kijakazi*, 2021 WL 5501781, at *4-5 (W.D. Okla. Nov. 23, 2021) (rejecting argument that ALJ erred by not mentioning plaintiff's asserted need for leg elevation in RFC despite treatment note indicating that plaintiff should elevate legs above heart for 20 percent of the workday; ALJ cited specific medical evidence from multiple practitioners suggesting plaintiff's limitations were not that severe, including normal physical examination findings

showing a full range of motion of extremities and normal gait); *see also Estrada Fontanez v. Kijakazi*, 2023 WL 1993970, at *4 (M.D. Fl. Feb. 14, 2023) (plaintiff failed to establish additional work-related restrictions should have been included in her RFC where, although plaintiff pointed to two treatment notes recommending leg elevation, those same notes also included recommendations regarding diuretics, diet, and weight loss, and the notes "did not specify the frequency with which [plaintiff] should elevate her legs and whether it would impact her ability to complete a normal workday and perform sedentary work as provided in the RFC").

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

**IT IS SO ORDERED.**

Dated this 27th day of February, 2023, at Kansas City, Kansas.

                                                  s/John W. Lungstrum
                                                  HON. JOHN W. LUNGSTRUM
                                                  United States District Judge